## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. CIV-06-0753-F<br>) |
| SHANE DENNIS CLARK and ELAINE WHEAT, | )<br>)<br>) |
| Defendants. | ) |

### ORDER

Cross motions for summary judgment are before the court: "Plaintiff, Shelter Mutual Insurance Company's Motion for Summary Judgment," filed November 8, 2006 (doc. no. 17); and "Defendant, Elaine Wheat's, Cross-Motion for Summary Judgment," filed December 26, 2006 (doc. no. 31).  Briefing is complete, and the motions are ready for determination.

### I. Background

This is an action for declaratory relief regarding coverage under an insurance policy.  In its motion, plaintiff Shelter Mutual Insurance Company (Shelter) asks the court to declare as a matter of law that there is no coverage under a homeowners insurance policy issued to Shane and Yvonne Clark for injuries sustained by Elaine Wheat as a result of a bullet fired by the insured, Shane Clark, at the Wheat residence. Ms. Wheat has sued Mr. Clark in state court.  Shelter's motion asks the court to declare that there is no coverage for Ms. Wheat's claims against Mr. Clark, and that Shelter has no duty to defend or indemnify Mr. Clark in the state court lawsuit brought by Ms. Wheat against Mr. Clark.

In this federal action, Ms. Wheat has alleged a counterclaim, seeking declarations of coverage for her injuries under Mr. Clark's homeowners policy. Ms. Wheat has also filed her own motion for summary judgment, asking the court to summarily declare that her injuries are covered under Mr. Clark's policy.

The principal issue is whether Ms. Wheat's claims arise, as a matter of law, from an "accident" as that term is used in the policy. Shelter argues there was no accident because Ms. Wheat's injuries were the result of Mr. Clark's intentional, wrongful conduct. Ms. Wheat argues that there was an accident, or that there is at least a fact question as to whether there was an accident, because when Mr. Clark fired the gun he did not intend to injure Ms. Wheat.

## II. Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

III. Undisputed Facts

The court finds that the following facts are undisputed.[1]

On February 10, 2005, the Clark girl and the Wheat boy had an altercation at school. Mr. Clark went to the Wheat residence carrying a semi-automatic pistol. He was met at the front sliding patio door of the Wheat residence by Ms. Wheat. Mr. Clark asked to see Ms. Wheat's son. When the son appeared, Mr. Clark initiated a struggle to gain entry into the residence. Ms. Wheat and her son closed and secured the door. Mr. Clark then drew the pistol and fired it once through the glass door. Mr. Clark intended to pull the trigger.[2] When he did so, Mr. Clark knew that Ms. Wheat was within an unsafe distance.[3] The bullet fired by Mr. Clark shattered the glass door and struck Ms. Wheat in the shoulder before it traveled down, collapsing her lung and

---

[1]For many of these facts, the court relies on allegations in the complaint which were admitted in defendant Wheat's answer. These facts are consistent with Ms. Wheat's more detailed version of events as stated in her response brief.

[2]This exact fact is not included in either parties' statement of material facts or in the allegations; however, it is clear there is no dispute that Mr. Clark intended to pull the trigger and to fire the bullet which injured Ms. Wheat. Both parties submit Mr. Clark's deposition testimony that he "intended to pull the trigger." (Clark depo, p.10.) Ms. Wheat's brief states that "Clark says the first shot, the one that struck Ms. Wheat, was intended to break the glass and free his hand and that the others were fired into the ground...and were intended solely to frighten Brandon [Wheat]." (Response brief, p. 2.) Ms. Wheat's Second Amended Petition filed in state court (attached to Shelter's moving brief as Ex. 8) alleges that "Shane Dennis Clark, accidentally shot Plaintiff, Elaine Wheat, while trying to shoot at someone else." Furthermore, both parties' arguments depend upon the fact that Mr. Clark intended to pull the trigger.

[3]The court notes but does not rely on Mr. Clark's testimony (at p. 10 of his deposition, submitted by both parties), that Ms. Wheat "was almost directly in front of me and [Brandon] was to the left of me," when Mr. Clark pulled the trigger and aimed the gun. These details regarding Ms. Wheat's precise location at the time of the shot are not presented in either parties' statement of material facts, nor are they included in the allegations. Accordingly, the court does not find that these details regarding Ms. Wheat's precise location are undisputed. Rather, the court finds that precision in this matter is not necessary because other undisputed facts make the conclusion inescapable that Ms. Wheat was within an unsafe distance of the shot and of the shattering glass door when Mr. Clark pulled the trigger, and that Mr. Clark knew this at the time.

lodging in her spine. Mr. Clark then entered the residence, pursuing Ms. Wheat's son. The Wheat boy left through the back door, jumped the fence and was running through a neighbor's yard when Mr. Clark fired three additional shots which did not hit the Wheat boy.[4]

Ms. Wheat has sued Mr. Clark for personal injuries and damages in state court. That action is captioned <u>Wheat v. Clark</u>, CJ-2006-1064, and is currently pending in the District Court of Oklahoma County, Oklahoma. Counsel for Ms. Wheat has notified Shelter of Ms. Wheat's claim for coverage under Mr. Clark's homeowners policy. Shelter brings the instant federal action seeking a declaration that it has no duty to defend or indemnify in the state court civil action brought by Ms. Wheat.

---

[4]The following facts are also undisputed, but the results reached in this order do not depend on them.

Mr. Clark was arrested later on the evening of February 10, 2005 and was charged with shooting with intent to kill and first-degree burglary. On June 16, 2006, Mr. Clark was sentenced on one count of shooting with intent to kill Elaine Wheat, one count of shooting with intent to kill Brandon Wheat, and one count of burglary. Mr. Clark was sentenced to 15 years on each count with the sentences to run concurrently.

The parties dispute whether Mr. Clark's sentence was based on a *nolo* plea or a guilty plea. They dispute the admissibility of the "Judgment and Sentencing" document attached to Shelter's motion. They also dispute the admissibility and effect of the very fact of Mr. Clark's plea and his sentence and conviction.

These disputed and undisputed facts, and the resulting legal issues, are immaterial to the parties' motions for summary judgment. The court does not consider the fact of Mr. Clark's arrest, his plea, or his sentence, with respect to any issue presented in the parties' motions. In particular, the court does not admit, and has not considered, the "Judgment and Sentencing" document. Given other, undisputed evidence regarding Mr. Clark's conduct and intent on February 10, 2005, evidence regarding Mr. Clark's arrest and the subsequent criminal proceedings is unnecessary.

The homeowners policy in question is policy number 35-71-4713494-1.[5] The policy was issued by Shelter to Shane Dennis Clark and Yvonne Clark, for the policy period December 7, 2004 through December 7, 2005. A copy of the policy is attached to Shelter's motion as Exhibit 1. There is no dispute regarding the language of the policy. Policy language is quoted, in pertinent part, below.

IV.  Discussion

The parties largely agree as to which provisions in the policy are pertinent.[6] Ms. Wheat seeks coverage under the provisions of the policy that provide coverage for "bodily injury." (Response brief, p. 24.) The applicable provisions are contained in section II of the policy, entitled "Comprehensive Personal Liability Protection," at coverage "E" ("Personal Liability) and at coverage "F"(Medical Payments to Others). (Policy at pp. 12-13.) Coverage "E" provides coverage only if the bodily injury is "caused by an occurrence covered by this policy." (Policy at p. 12.) The policy defines "occurrence" as "an accident including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damages." (Policy at p. 3, ¶ 12, definitions.) Coverage "F" provides coverage only for expenses incurred "within 3 years from the date of an accident causing bodily injury covered by this

---

[5]The policy attached to Shelter's motion shows the number stated in the text of this order. Shelter's statement of undisputed material facts gives a policy number which is different by one digit.

[6]Shelter's brief addresses personal injury coverage, but Ms. Wheat makes no claim under the policy's "personal injury" coverage. (Wheat response brief, p. 24.) If Ms. Wheat were to claim under that coverage, the exclusion for "personal injury arising out of a willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured" would apply. (*See*, "Personal Injury Liability Coverage" and "Exclusions" at pp. 19-20 of the policy.) This is because the undisputed facts conclusively establish violation of at least one Oklahoma penal statute. *See, e.g.*, Oklahoma's "Reckless Conduct" (21 O.S. 2001 § 1289.11) or "Felony Discharging Firearms" (21 O.S. 2001 §1289.17A).

policy." (Policy at p. 12.)  Thus, under either of the applicable coverage provisions, it is critical to determine whether Ms. Wheat's injuries were caused by an "accident."

Only if Ms. Wheat's injuries come within these coverage provisions do the policy's exclusion provisions become relevant.  The pertinent provision excludes coverage for "bodily injury or property damage expected or intended by an insured." (Policy at p. 14, exclusions, section II, ¶ 5.)

A.  Coverage Provisions

Coverage provisions extremely similar (if not identical) to the ones in issue here were before the court in Massachusetts Bay Insurance Company v. Gordon, 708 F. Supp. 1232 (W.D. Okla. 1989).  Like the instant case, Gordon was a declaratory judgment action brought by the insured, which came before Judge Wayne Alley on cross motions for summary judgment.  The insurer argued that there was no coverage because there was no accident within the meaning of the policy.  The insured, who had moved out of the home, had entered the home forcibly and without consent, and battered a man who was spending the night there.  The insured pled guilty to the criminal misdemeanor of entering a building with intent to commit a felony, larceny or, malicious mischief.  The insured then requested the insurance company to defend and indemnify him in the state court civil action brought by the victim of his assault.

The insured in Gordon argued that there was coverage because the victim's injuries were accidental in the sense that the insured had not intended to injure the victim of his assault as seriously as he did.  After reviewing the definition of "accident" as developed in Oklahoma insurance law, the court found that "[r]egardless of [the insured actor's] subjective intent," the injuries were "the natural, reasonably foreseeable, and to-be-expected result of [the insured's] violent assault upon [the victim]." Gordon, 708 F. Supp. at 1234.  The court concluded that the "injury was not caused by an 'accident' or 'occurrence' within the meaning of the policy.'" Id.

Accordingly, the court found that the insurer had no duty to defend or indemnify, and it granted summary judgment to that effect. *Id*. at 1234-35.

Ms. Wheat correctly points out that Gordon is distinguishable because in that case the insured directly assaulted the victim so that there was no question but that the insured intended some injury to the victim. This distinction, however, does not change the principles of Oklahoma insurance law applied by the court in Gordon. Those principles focus less on the actor's subjective intent to inflict particular injuries or results than they do on the intentionality or voluntariness with which the act is performed. In that regard, the case relied most heavily upon in Gordon is United States Fidelity and Guaranty Co. v. Briscoe, 239 P.2d 754 (1952). In Briscoe, the Oklahoma Supreme Court held that the insurer had no liability for damages caused over a period of months by cement dust from a cement loading mill. As Oklahoma law is explained in Briscoe (and quoted in Gordon), "the words 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally." Briscoe at 756, quoted in Gordon at 1234. Briscoe then adopts the following common usage definitions. Briscoe defines "accident" as "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event, chance, or contingency." Briscoe at 757. Briscoe defines "accidental" as meaning "happening by chance or unexpectedly, undesigned; unintentional; unforeseen, or unpremeditated." Briscoe at 757.

Before stating its final conclusion that there was no liability under the policy, Briscoe observes that, in that case, "both the means and the result were, in no sense, accidental." But the most important factor in the Court's reasoning appears to be that "the means" were intentional. As stated near the end of the opinion in Briscoe:

> Taking into consideration all of the facts and circumstances, we are of the opinion, and so hold, that <u>the claims asserted</u> against contractor were not predicated on, or caused by accident, and not within the coverage of insurance policy, sued upon. They <u>were predicated upon a series of acts</u>, which continued approximately four months, and <u>[which were] at all times, voluntary, intentional, tortious and wrongful,</u> resulting from negligent conduct of contractor. Doubtless same could have been abated by injunction. In any event, same were not caused by accident, in any sense of the word.

*Id*. at 757 (emphasis added).

Other cases confirm this court's understanding that while Oklahoma law allows for some flexibility in applying these principles to any particular set of facts, the intentionality with which acts are performed, may, in certain circumstances, require the conclusion that there was no accident within the meaning of an insurance policy. For example, in <u>Penley v. Gulf Insurance Company</u>, 414 P.2d 305 (Okla. 1966), the Oklahoma Supreme Court found coverage for damages caused by the insured's employee fueling an engine with gasoline rather than with diesel fuel. Although the result was different in <u>Penley</u> than in <u>Briscoe</u> or <u>Gordon</u>, the Court quoted with approval language from a New Jersey case which stated that "an intentional or willful tort would negative the existence of an accident." *Id*. at 308-09. The Court also stated in <u>Penley</u> that public policy prevents insurance covering an intentional act to injure. *Id*. at 309.

Moreover, Ms. Wheat's argument – which would have the court focus on Mr. Clark's claimed lack of intention to injure Ms. Wheat as opposed to the admitted intentionality and voluntariness with which Mr. Clark fired his gun through the glass door – ignores the coverage language in the Shelter policy. The policy provides coverage for "sums...an insured becomes legally obligated to pay as damages because of bodily injury...*caused by* an *occurrence* covered by the policy." (Policy at p. 12,

coverage "E"; emphasis added.)  An "occurrence" is defined as "*[a]n accident including* injurious *exposure to conditions, which results*, during the policy term, *in bodily injury or property damage*." (Policy at p. 3, definitions; emphasis added.) Thus, the applicable coverage provisions regarding "an accident" refer to *the cause* of the injuries, or to the victim's *exposure to conditions which result in* injuries; the coverage provisions do not refer to "accidental *injuries*."

The court summarizes its analysis and conclusions to this point as follows.

1. The undisputed facts establish that the insured intentionally carried a semi-automatic pistol to a residence and intentionally fired that gun into a glass door knowing that Ms. Wheat was within an unsafe distance. The intentionality and violence with which Mr. Clark acted, and with which he intentionally put Ms. Wheat in danger, require the conclusion that there was no accident within the meaning of the insurance policy. This is true regardless of the exact injuries or damages which Mr. Clark did or did not intend because Mr. Clark's acts were, to quote Briscoe, "voluntary, intentional, tortious, and wrongful."

2. Even if the court were to focus exclusively on the arguably accidental nature of Ms. Wheat's exact injuries rather than on the admitted intentionality of Mr. Clark's conduct, as Ms. Wheat urges the court to do, the court finds and concludes that Ms. Wheat's injuries were, to quote Gordon, "the natural, reasonably foreseeable, and to-be-expected result of [Mr. Clark's] violent assault." This is true even if the results of Mr. Clark's actions were far more serious than the property damage which he unquestionably intended when he shot into the glass door.

3. The coverage provisions in the Shelter policy refer to the nature of the causal event or occurrence as an accident.  The coverage provisions do not refer to "accidental injuries."

4. Public policy considerations support the view that the insured should not be able to invoke protection from his insurer for damages caused by his own intentionally violent and dangerous conduct.

5. Public policy considerations also suggest that coverage determinations should not depend unnecessarily upon findings regarding an actor's precise subjective intent to cause, or not cause, any particular set, or degree, of injuries.

For all of these reasons, the court finds and concludes that there was, as a matter of law, no accident and no occurrence within the meaning of the Shelter policy. Shelter's motion for summary judgment should be granted and Ms. Wheat's cross-motion should be denied because Ms. Wheat's injuries do not come within the applicable coverage provisions.

## B.  Exclusions

Although the above determination makes it unnecessary to consider the policy's exclusions, the court has done so. As previously stated, the policy excludes coverage for "bodily injury...expected or intended by an insured." (Policy, p. 14.) Having determined that Ms. Wheat's injuries were the natural, reasonably foreseeable, and to-be-expected result of Mr. Clark's violent assault, the court finds and concludes that Ms. Wheat's injuries were either expected or intended by Mr. Clark within the meaning of the exclusionary language of the policy. Shelter's motion for summary judgment should be granted and Ms. Wheat's cross-motion should be denied because Ms. Wheat's injuries come within the applicable exclusion.

## V.  Conclusion

After careful consideration of the parties' submissions, the record, and the relevant legal authorities, plaintiff Shelter Mutual Insurance Company's motion for

summary judgment against defendant Elaine Wheat is **GRANTED**, and defendant Wheat's cross-motion for summary judgment is **DENIED**.[7]

Dated this 5th day of February, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


06-0753p008(pub).wpd

---

[7]Shelter's motion for summary judgment was not directed against Mr. Clark, and the "Order Granting Relief from [bankruptcy] Stay" of November 28, 2006 appears to only lift the stay against Mr. Clark to the extent that it allows Elaine Wheat, creditor, to pursue her claim against Mr. Clark's homeowners' insurance in state and federal court. Accordingly, no final judgment is entered in this action at this time. This action will be set for status conference by separate order, for the purpose of discussing any issues which may remain for adjudication with respect to Mr. Clark. If the parties notify the court that any such remaining issues have been resolved, then the court will cancel the status conference and enter final judgment.